## THE NEW YORK CENTRAL NO. 3.

### THE LILLIAN.

#### No. 354.

Circuit Court of Appeals, Second Circuit.

June 9, 1930.

Macklin, Brown, Lenahan & Speer, of New York City (Edmund F. Lamb, of New York City, of counsel), for appellant.

Bigham, Englar, Jones & Houston, of New York City (A. J. McElhinney and L. J. Matteson, both of New York City, of counsel), for appellee New York Cent. R. Co.

William F. Purdy, of New York City (John E. Purdy, of New York City, of counsel), for appellee Harry Shanks.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge.

The collision occurred about 5:30 p. m. on November 5, 1926, off the end of Pier 24 in the North River. The Lillian picked up the barge Atlantic No. 54 on the north side of Pier 25 and placed her close under the stern of another barge which lay at the end of said pier, headed down stream. The Lillian then put out short hawsers from the forward bitts of the latter barge to the stern bitts of the tug and proceeded to round to with her tow; the tide being flood and the wind southwest, so as to head up stream. It was in the course of this maneuver that the collision occurred; the starboard stern corner of barge No. 54 being struck by the starboard bow corner of car float No. 22. This float, with Float No. 33 made fast on her port side, was being pulled out of the slip between Piers 23 and 24 by the tug New York Central No. 3. When picked up by the tug, both floats lay in the corner of the slip at the bulkhead and the north side of Pier 23. Float No. 22 was a large steel float 350 feet in length, and No. 33 was a wooden float some 60 feet shorter. The tug put a headline from her bow to the middle cleat on the bow of No. 22 and proceeded to back out of the slip, twice sounding a slip whistle. There was no lookout on the stern of the tug, but one of her deck hands was stationed as lookout on the bow of Float No. 22. He did not sight the Lillian's tow until the bow of his float was at least clear of the end of Pier 24. Apparently the tug was then on the starboard side of Float No. 22, the headline having been shifted from the cleat on the bow to the third cleat on the starboard side of the float. When notified that a barge was under his stern, the tug captain "backed down a little bit" until he could himself see the location of the barge. He says she "was almost clear of us, * * * about 75 feet, I should say, off 24," and headed "at an angle up the river." He blew two whistles—a meaningless signal for such a situation, which is one of the special circumstances, The Socony No. 19 (C. C. A.) 24 F.(2d) 653—then an alarm, and finally ordered his engines ahead in an effort to stop his tow; but the way of the floats continued sufficiently to bring the bow of No. 22 into contact with the stern of the barge.

The District Court made no finding as to the place of the collision. To us it seems clear that it must have been at least 200 feet,

and was probably considerably more, off the end of Pier 24. Pier 25 is 150 feet longer than Pier 24. The Lillian made up her tow on the end of Pier 25, and rounded to under a port helm to go up stream, and it is incredible that her tow should not have got out a substantial distance beyond the end of the pier whence she started. Whatever that distance was, plus 150 feet, gives the distance of the barge from the end of Pier 24. Whether she was dead in the water, shifting her hawser (as the captain of tug No. 3 claimed, and the District Judge was inclined to believe), or was merely slowed down, as appellant's witnesses testified, makes not the slightest difference. Neither hypothesis can excuse Float 22 for coming up and ramming her.

We see no fault in the conduct of the Lillian. She was not navigating across the mouth of the slip, and did not get below Pier 24; hence there was no reason for her to give attention to the tug's slip whistles, which the Lillian's master says he did not hear. When the Lillian's master heard the alarm, he looked back and saw his barge already in collision. As we read the record, it presents nothing but an unexcused bumping of a flotilla, temporarily slowed down and not quite ready to pull away on a steady course, some two or three hundred feet off Pier 24, the explanation of which is to be found either in the tug's faulty lookout, if the barge was so near as is claimed when she was sighted, or in the captain's willingness to risk a close shave rather than promptly to check his floats, after he saw that the barge "was almost clear of us."

The decree is reversed, and the cause remanded for entry of an interlocutory decree holding New York Central No. 3 solely responsible.